TCF BANK SAVINGS FSB, f/k/a TCF Banking and Savings, F.A., Relator,

v.

COMMISSIONER OF REVENUE, Respondent.

No. CX-91-1992.

Supreme Court of Minnesota.

July 2, 1992.

John W. Windhorst, Jr., William R. Goetz, Dorsey & Whitney, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Gregory P. Huwe, Asst. Atty. Gen., Tax Litigation Div., St. Paul, for respondent.

TOMLJANOVICH, Justice.

This case presents an issue of statutory construction. The question is whether mass-mailed business solicitation letters are publications regularly issued at intervals not exceeding three months and therefore entitled to an exemption from sales and use taxes under Minn.Stat. § 297A.25, subd. 10 (1990). After oral argument based on stipulated facts, the Tax Court upheld the Commissioner of Revenue's denial of an exemption. We affirm.

From October 1, 1985, through December 31, 1987, relator bought printed materials to promote its financial services. The materials were designed by relator's advertising staff. By order dated March 31, 1989, the Commissioner determined that materials purchased in 32 transactions from May 30, 1986, to December 15, 1987, were subject to sales or use tax in the amount of $31,522.74 plus interest. The materials were designed to promote relator's financial services, including lines of credit and checking accounts.

Almost 1,000,000 letters promoting relator's credit line and checking services were sent to consumers by direct mail. Relator refers to each group of mail materials as a "program." In Program 1, for example, 89,956 letters extolling the virtues of relator's credit lines, plus application forms, were sent in seven mailings from December 30, 1986, to February 9, 1987. The mailings were directed to housing units within the market areas of certain of relator's branches. In three instances, slightly different versions of those mailings were sent to existing customers. Relator has no record of what households received any particular material by mail or from in-bank displays, but in each advertising program, the same material was not sent to the same address more than once.

In this case, we must decide whether relator's mass-mail materials are "publication[s] regularly issued at intervals not exceeding three months" under Minn. Stat. § 297A.25, subd. 10. "Review of Tax Court determinations is generally limited to determining whether there is sufficient evidence to support the Tax Court's decision. Although review of questions of fact is limited, this court has plenary power with respect to questions of law." *Nagaraja v. Commissioner of Revenue,* 352 N.W.2d 373, 376 (Minn.1984) (citations omitted). Statutory construction is a question of law. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs. Inc.,* 260 N.W.2d 579, 582 (Minn.1977). Tax exemptions are to be strictly construed. *Camping & Educ. Found. v. State,* 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969).

Minn.Stat. § 297A.02 (1990) makes all retail sales taxable unless excepted. One exception is for materials used in producing "publications." Minn.Stat. § 297A.25, subd. 10 provides in relevant part:

**Publications materials.** The gross receipts from the sale of and storage, use

or other consumption in Minnesota of tangible personal property (except as provided in Sec. 297A.14) which is used or consumed in producing any publication regularly issued at average intervals not exceeding three months, and any such publication are exempt.

By its terms, the statute grants a tax exemption only to (1) publications; (2) regularly issued; (3) at average intervals not exceeding three months.

### Publications

■ The legislature has not defined "publication" in this context. Elsewhere, it is defined as "communication (as of news or information) to the public." Webster's Third New International Dictionary 1836 (1976); *see also* Black's Law Dictionary 1227–28 (6th ed. 1990). This court has said that to be a publication under the statute, material must have "the main purpose of informing the general public * * *." *Hancock–Nelson Mercantile Co. v. Commissioner of Taxation*, 298 Minn. 341, 345, 215 N.W.2d 620, 622 (1974). Even circulars made up exclusively of advertising can be "publications." *United Hardware Distrib. Co. v. Commissioner of Revenue*, 284 N.W.2d 820, 822 (Minn.1979).

■ Respondent argues that relator's materials are not publications because they are disseminated to a defined group of persons, by ZIP code, rather than to the general public. In *Hancock–Nelson*, this court said that a wholesale price catalog sent only to those who contracted to receive it was not distributed to the general public and therefore was not a "publication." *Id.* 298 Minn. at 344–45, 215 N.W.2d at 622. In this case, even assuming some duplication, relator mailed almost 1 million pieces. An audience of that size cannot be distinguished from the "general public" in any meaningful way. In sum, it is clear that relator's materials qualify as "publications" because they inform recipients of banking services and they are disseminated to more than a small, select audience.

### Regularly Issued

Relator reads the "regularly issued" and "average intervals not exceeding three months" requirements together as establishing a requirement of "periodicity." Relator then argues that each of its advertising programs ended before the next began, and the interval between programs always was less than three months, so that the "periodicity" requirement was met. Relator's argument, while certainly novel and creative, misapprehends the nature of the "regularly issued" requirement.

■ Regular issue is the opposite of random issue. It requires patterned, periodic release, be it weekly, bi-weekly, monthly, bi-monthly or quarterly. There is *no* indication of a fixed time pattern in relator's distribution of materials. But even assuming that relator's materials were distributed regularly, they were not *issued* regularly.

■ Issuance is not the same as distribution. It is implicit in the "regularly issued" requirement that each edition of a publication be new and significantly different from the versions that preceded it. Relator's materials do not satisfy such a requirement. Relator had one basic mail package for its credit line and one for its checking services. Any changes in relator's checking material from mailing to mailing were minuscule or nonexistent. The same is true of mailings for the credit line. In short, relator *did not produce* multiple issues of its publications. It had one issue for its checking services and one for its credit line, and the same issues were distributed multiple times.

If appellant's theory were correct, an advertiser could print 1,000,000 fliers, mail 10,000 every three months for 25 years until the supply is exhausted and still qualify for a tax exemption because the materials were regularly distributed at average intervals not exceeding three months. Given the plain language of the statute and our duty to narrowly construe tax exemptions, we are confident that the legislature did not intend to exempt this type of single "publication," distributed over and over again.

*Average intervals*

Because we hold that relator's materials were not regularly issued within the meaning of that phrase in Minn.Stat. § 297A.25, subd. 10, we need not address the requirement of average intervals not exceeding 90 days.

Affirmed.