*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0863
A14-1021**

J. D. Donovan, Inc., et al.,
Appellants,

vs.

Minnesota Department of Transportation, et al.,
Respondents.

**Filed February 2, 2015
Affirmed
Reilly, Judge**

Ramsey County District Court
File Nos. 62-CV-13-1272, 62-CV-13-1242

Thomas R. Revnew, Jessica H. Hofrichter, Seaton, Peters & Revnew, P.A., Minneapolis, Minnesota (for appellants)

Lori Swanson, Attorney General, Mathew Ferche, Stephen D. Melchionne, Assistant Attorneys General, St. Paul, Minnesota (for respondents)

Considered and decided by Chutich, Presiding Judge; Reilly, Judge; and Toussaint, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REILLY**, Judge

These consolidated appeals challenge the district courts' application of the Minnesota Prevailing Wage Act (MPWA). Appellants contest determinations by the district courts granting summary judgment in favor of respondents, arguing that the district courts erred by (1) determining that the work performed by appellants qualified as "work under the contract" subject to the MPWA, and (2) concluding that the commercial-establishment exception does not apply. We affirm.

## FACTS

In July 2009, the State of Minnesota, through the Minnesota Department of Transportation (MnDOT), awarded a contract for a construction project to general contractor Hardrives, Inc. (Hardrives) for full completion of a stretch of state highway along trunk highways 10 and 23 in Benton County, Minnesota (State Project 0501-27). Hardrives agreed to provide milling concrete and bituminous surface, apply an ultrathin bonded wearing course overlay, and replace guardrails on a 2.542-mile section of highway. The project was scheduled to begin on August 3, 2009, and end within 15 working days.

In April 2012, MnDOT awarded a contract to general contractor OMG Midwest, Inc., d/b/a Southern Minnesota Construction, Inc. (OMG Midwest) to perform construction work along trunk highway 30 in Blue Earth County, Minnesota (State Project 0705-19). OMG Midwest agreed to provide concrete pavement rehabilitation, bituminous mill and overlay with culvert repairs and guardrail, and concrete pavement

rehabilitation to a 14.454-mile section of the highway. The project was scheduled to begin on April 30, 2012, and end by June 30, 2012.

MnDOT administers activities required to implement, monitor, and enforce the State and Federal Small Business Contracting Programs, including those for Disadvantaged Business Enterprises (DBE). The contracts for the two state projects each contained a federal DBE component, requiring the use of a DBE on a certain percentage of the projects. OMG Midwest and Hardrives committed to achieve 6.4% and 4.8% DBE participation on their respective state projects. OMG Midwest and Hardrives subcontracted with appellant J.D. Donovan, Inc. (Donovan) for asphalt cement supplies and trucking services. Donovan is certified as a Minnesota DBE engaged under the Code of Federal Regulations, title 49, part 26 for specialized freight, petroleum and petroleum products, and construction sand and gravel mining.

### OMG Midwest's Contract

OMG Midwest contracted with Donovan to purchase 300 tons of asphalt cement material. Donovan purchased the material from Northern Tier Energy in St. Paul Park, Minnesota, and transported it to OMG Midwest's fixed commercial plant location near Kasota, Minnesota. MnDOT credited OMG Midwest with 60% DBE participation for the portion of the Donovan subcontract attributable to asphalt cement supply, and 100% DBE participation for the portion of the Donovan subcontract attributable to trucking services. The contract between MnDOT and OMG Midwest included an addendum for Federally Funded Construction Contracts, Special Provisions Division A – Labor, requiring all contractors to submit a weekly payroll statement to MnDOT along with a

3

completed and signed Statement of Compliance form. These special provisions required the prime contractor to maintain responsibility for all certified payroll records, including those of all subcontractors, throughout the course of the construction project.

*Hardrives's Contract*

Hardrives contracted with Donovan to purchase asphalt cement materials and arrange for transport of the material from Flint Hills Resources in Savage, Minnesota, to Hardrives's fixed commercial plant location. Hardrives also contracted with appellant Wayne Transports, Inc. (Wayne) for service on the project. Wayne is a common motor and contract carrier, conducting for-hire trucking operations and transporting a variety of asphalt, chemical, dry bulk, propane, and petroleum products. Wayne transported approximately 1,129 loads of asphalt cement for Hardrives. MnDOT credited Hardrives with 60% DBE participation for the portion of the Donovan subcontract attributable to asphalt cement supply and 100% DBE participation for the portion of the Donovan subcontract attributable to trucking services. The parties' contract included an addendum for Federally Funded Construction Contracts, Special Provisions Division A – Labor, requiring all contractors to submit a weekly payroll statement to the department along with a completed and signed Statement of Compliance form. Under these special provisions, Hardrives was required to maintain responsibility for the certified payroll records of its subcontractors throughout the course of the construction project.

*MnDOT demands payroll records from OMG Midwest and Hardrives*

MnDOT later demanded payroll records from OMG Midwest and Hardrives for the hauling work performed by Donovan and Wayne in connection with the state

4

projects. MnDOT's labor-compliance unit informed OMG Midwest and Hardrives that the hauling work undertaken by the subcontractors was not exempt under Minn. Stat. § 177.4, subd. 2 (2014), and demanded compliance. Donovan and Wayne refused to comply with MnDOT's request. Instead, Hardrives, Donovan, and Wayne initiated an action in district court against MnDOT and the Minnesota Department of Labor & Industry (DLI) seeking declaratory judgment and injunctive relief. Donovan and OMG Midwest initiated a separate action in district court against MnDOT and DLI on similar grounds, also seeking declaratory judgment and injunctive relief. The district courts dismissed DLI from the actions and granted MnDOT's motion for dispositive relief. These consolidated appeals followed.

## DECISION

> Rule 56 of the Minnesota Rules of Civil Procedure is designed to implement the stated purpose of the rules— securing a just, speedy, and inexpensive determination of an action—by allowing a court to dispose of an action on the merits if there is no genuine dispute regarding the material facts and a party is entitled to judgment under the law applicable to such facts.

*DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997). Accordingly, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from summary judgment, the reviewing court applies a de novo standard of review. *Kratzer v. Welsh Cos., LLC*, 771 N.W.2d 14, 18 (Minn. 2009). The evidence is viewed in the light most favorable to the party against whom judgment was

5

granted.  *Id*.  The application of statutes to undisputed facts is a legal conclusion, which we review de novo.  *City of Morris v. Sax Invs., Inc*., 749 N.W.2d 1, 5 (Minn. 2008).

**I.**

The MPWA requires contractors performing work on state projects to pay their laborers the prevailing wage.  Minn. Stat. §§ 177.41-44 (2014); *see also* Minn. Stat. § 161.32 (2014) (regulating construction and maintenance contracts for trunk highways). This directive is based on the legislature's conviction that it is in the public's interest to ensure that public-works are "constructed and maintained by the best means and highest quality of labor reasonably available and that persons working on public works be compensated according to the real value of the services they perform."  Minn. Stat. § 177.41.  Accordingly, it is the policy in Minnesota "that wages of laborers, workers, and mechanics on projects financed in whole or part by state funds should be comparable to wages paid for similar work in the community as a whole."  *Id*.  The prevailing wage is determined by the commissioner of labor and industry.  Minn. Stat. § 177.43, subd. 4. The MPWA was modeled after the federal Davis-Bacon Act, 40 U.S.C. §§ 3141-3148 (2006), which governs the payment of wages on federally funded projects.  *Dicks v. Minn. Dep't of Admin.*, 627 N.W.2d 334, 337 (Minn. App. 2001), *review denied* (Minn. July 24, 2001).  The Davis-Bacon Act was enacted to protect union employees, and provides that laborers on federal construction projects must be paid no less than the minimum wage "without subsequent deduction or rebate on any account."  *Midwest Pipe Insulation, Inc. v. MD Mech., Inc.*, 771 N.W.2d 28, 30 n.2 (Minn. 2009) (citing 40 U.S.C. § 3142(c)(1)).

6

The first issue on appeal is whether the district courts erred in determining that Donovan and Wayne performed "work under the contract" as that term is defined in the MPWA. This issue turns on a question of statutory interpretation. Statutory interpretation presents a question of law that we review de novo. *Hoekstra v. Comm'r of Pub. Safety*, 839 N.W.2d 536, 540 (Minn. App. 2013). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). We begin with the proposition that the plain language of a statute is the "touchstone" of statutory interpretation. *ILHC of Eagan, LLC v. Cnty. of Dakota*, 693 N.W.2d 412, 419 (Minn. 2005). Thus, where the statutory language is "clear, explicit, unambiguous, and free from obscurity, courts are bound to expound the language according to the common sense and ordinary meaning of the words." *Krueger v. Zeman Const. Co.*, 758 N.W.2d 881, 885 (Minn. App. 2008) *aff'd*, 781 N.W.2d 858 (Minn. 2010) (citations omitted); Minn. Stat. § 645.08(1) (2014) ("[W]ords and phrases are construed according to rules of grammar and according to their common and approved usage[.]"). Judicial construction is not necessary when a statute's meaning is plain from its language as applied to the facts of the case. *ILHC of Eagan, LLC*, 693 N.W.2d at 419.

The rules governing prevailing-wage determinations define "work under the contract" as

> all construction activities associated with the public works project, including any required hauling activities on the site of or to or from a public works project and work conducted pursuant to a contract as defined by item B, regardless of whether the construction activity or work is performed by the

7

prime contractor, subcontractor, trucking broker, trucking firms, independent contractor, or employee or agent of any of the foregoing entities, and regardless of which entity or person hires or contracts with another.

Minn. R. 5200.1106, subp. 2(A) (2013). "Contract" is defined as "the written instrument containing the consideration and the terms of agreement between the prime contractor and the contracting agency for the construction of all or a part of . . . a highway pursuant to Minnesota Statutes, sections 161.32 and 177.44." *Id*., subp. 2(B). "Contract" includes project proposals, plans, and specifications. *Id*.

MnDOT argues that appellants are subcontractors on the state projects and performed "work under the contract" under a plain reading of the MPWA, obviating the need for further interpretation by this court. The prevailing-wage provision applies to "laborers" who are "employed by a contractor, subcontractor, agent, or other person" performing work on a contract to which the state is a party. Minn. Stat. § 177.44, subd. 1; *see also Weyerhaeuser Co. v. Twin City Millwork Co*., 291 Minn. 293, 301, 191 N.W.2d 401, 406 (1971) (determining company was acting as a subcontractor in construction of a public project where product delivered was a "significant part of construction"). Indeed, Donovan's own certification identifies the company as a DBE subcontractor on the state project. In both instances, the district courts agreed with MnDOT and concluded that appellants' activities qualified as "work under the contract." Regarding State Project 0705-19, the district court found that "there is no genuine issue of material fact as to whether Donovan's deliveries constituted 'work under the contract.'" Similarly, the district court for State Project 0501-27 determined that the

8

Minnesota rules placed Donovan's and Wayne's trucking activities "within the definitions of 'contractor' and 'work under the contract.'"

Appellants argue that hauling loads of asphalt cement from a refinery to the general contractor does not qualify as "work under the contract." Appellants assert two arguments in support of this position: first, that they did not perform "construction activity" within the meaning of the relevant statutes and rules, and second, that the work did not take place at a construction site.

With respect to the first argument, appellants contend that "construction activity" is an ambiguous term under the rules because it is susceptible to more than one interpretation. In matters of statutory construction, a statute or rule is ambiguous if it has more than one reasonable interpretation. *Cnty. of Dakota v. Cameron*, 839 N.W.2d 700, 705 (Minn. 2013). If a statute is ambiguous, a court may "resort to the canons of statutory construction to determine its meaning." *Id.* However, if a statute is unambiguous, we apply the plain meaning of the statute. *Id.* Appellants argue the term "construction activity" is ambiguous because it is unclear whether it includes the act of hauling materials from a refinery to a commercial establishment. We disagree. Rule 5200.1106, subp. 2(D) provides that:

> "Contractor" means an individual or business entity that is engaged in construction or construction service-related activities including trucking activities either directly or indirectly through a contract as defined by item B, or by subcontract with the prime contractor, or by a further subcontract with any other person or business entity performing work under the contract.

9

We conclude that this broad definition encompasses the trucking services provided by both Donovan and Wayne on the state projects. It is undisputed that Donovan's and Wayne's drivers hauled asphalt cement materials from the commercial refineries to the prime contractor's facility and, under a plain reading of rule 5200.1106, these trucking activities qualify as "construction service-related activities."

Next, appellants argue the hauling activities do not meet the definition of "work under the contract" because they did not physically take place at a construction site. Rule 5200.1106 provides that construction activities include "any required hauling activities on the site of or to or from a public works project." Minn. R. 5200.1106, subp. 2(A). Appellants note that they hauled materials from the refinery to fixed commercial plant locations and did not make any deliveries to the jobsite itself. If possible, a law should be construed "to give effect to all its provisions," Minn. Stat. § 645.16, and "'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.'" *ILHC of Eagan, LLC*, 693 N.W.2d at 419 (quoting *Owens v. Federated Mut. Implement & Hardware Ins. Co*., 328 N.W.2d 162, 164 (Minn. 1983)). Appellants claim that, by ignoring the phrase "to or from a public works project," the district court arguably rendered the language superfluous. We disagree. Subpart 2 of the rule defines "work under the contract" broadly enough to encompass construction activities "including any required hauling activities on the site of or to or from a public works project and work conducted pursuant to a contract as defined by item B." Minn. R. 5200.1106, subp. 2(A). Item B enumerates six examples of hauling activities that are considered "work under the contract" for purposes of the MPWA, including "the delivery of materials or products by

10

trucks hired by a contractor, subcontractor, or agent thereof, from a commercial establishment." Minn. R. 5200.1106, subp. 3(B)(5). We conclude that the district courts did not err by determining that appellants' hauling activities fell squarely within the rule as work conducted pursuant to a contract.

## II.

The next issue raised on appeal is whether the hauling activity is exempt from the MPWA under the commercial-establishment exemption. The MPWA excludes from the prevailing-wage requirement

> wage rates and hours of employment of laborers or mechanics engaged in the processing or manufacture of materials or products, or to the delivery of materials or products by or for commercial establishments which have a fixed place of business from which they regularly supply the processed or manufactured materials or products.

Minn. Stat. § 177.44, subd. 2. The administrative rules define a "commercial establishment" as

> [A] business entity that has not set up at the location from which deliveries are made primarily to serve public works projects and, prior to and at the time of advertisement of the public works contract, it:
>     (1) owned or leased the land on which it operates;
>     (2) possessed business records indicating that sales from the location from which deliveries are made are for other than the contracting agency's public works contracts;
>     (3) advertised the availability of material for sale to the general public from the location and had facilities available for effecting sales at the location; and
>     (4) has acquired all necessary permits to operate from the location, and met all legal obligations of state and local regulations to excavate soils, sand, gravel, or rock for the purpose of receiving something of value for the product.

Minn. R. 5200.1106, subp. 5(F).

Appellants argue that under the plain language of the statute, they delivered materials "by or for" the general contractor. Appellants claim that the general contractors' facilities meet all of the requirements of a "commercial establishment," given the longevity of their operations and the fact that their facilities are open to the general public and do not exist solely to serve public-works contracts. In response, MnDOT argues that appellants performed work for the general contractors on a state project which, as a matter of law, places it within the meaning of the MPWA. *See* Minn. R. 5200.1106, subp. 3(B)(5) (listing six examples of work considered to be "under a contract," including delivery of materials by trucks "hired by a contractor").

Appellants argue that MnDOT is interpreting Minn. Stat. § 177.44 and Minn. R. 5200.1106 in a way that is at odds with its previous interpretations. We are sympathetic to appellant's argument that they have not been held to the requirements of the prevailing-wage act before these incidents. Indeed, the factual record reflects that appellants previously delivered materials on state projects, similar to the deliveries at issue in this case, without the MPWA being enforced. Nevertheless, the parties' contracts clearly provide that Hardrives and OMG Midwest, as general contractors, bear the ultimate responsibility of submitting certified payroll statements for the work performed by their subcontractors on the state projects. MnDOT applied the plain and unambiguous language of the prevailing-wage statute to appellants' work, and MnDOT's action is in line with the stated public policy of ensuring that laborers are "compensated according to the real value of the services they perform." Minn. Stat. § 177.41. We

12

conclude that the district courts did not err in granting dispositive relief in MnDOT's favor based upon a plain reading of the statute and consistent with federal and state public policy considerations.

**Affirmed.**