HENNEPIN BROADCASTING ASSOCIATES, INC., d.b.a. RADIO
STATIONS KTCR/AM AND KTCR/FM v. AMERICAN
FEDERATION OF TELEVISION AND RADIO
ARTISTS AND OTHERS.*

223 N. W. 2d 391.

October 25, 1974—No. 44587.

*James Malcolm Williams,* for appellant.
*Thiel & Sorenson* and *James T. Hansing,* for respondents.

Heard before Kelly, MacLaughlin, and Yetka, JJ., and considered and
decided by the court en banc.

PER CURIAM.

Plaintiff, Hennepin Broadcasting Associates, Inc., commenced this
action to remedy the alleged malicious commission of intentional torts
and malicious bad-faith breach of contract by defendants. The com-
plaint sought damages and injunctive relief, alleging that defendants,
American Federation of Television and Radio Artists (AFTRA) and
certain named individuals either associated with AFTRA or employed
by plaintiff, terminated the broadcasting ability of plaintiff's stations
by destroying their electronic signals, acted contrary to Federal Com-
munications Commission law, interfered with plaintiff's contractual
obligations, engaged in an illegal wildcat strike, and threatened visi-
tors and employees. Plaintiff first filed a motion for a temporary re-
straining order which was denied. Plaintiff then filed a motion for a
temporary injunction. Defendants filed a motion for summary judg-
ment. Upon the complaint and the affidavits filed by both parties, the
trial court entered an order granting defendants' motion for summary

* Certiorari denied, 420 U. S. 975, 95 S. Ct. 1398, 43 L. ed. 2d 655 (1975).

judgment with respect to all defendants except Gregory B. Ellsworth,[1] on the theory that the activities complained of were preempted by the National Labor Relations Act (NLRA), and denying plaintiff's motion for a temporary injunction. Plaintiff appeals from that order. We affirm in part and reverse in part.

Plaintiff, a Minnesota corporation engaged in the operation of an FM radio station in Minneapolis and an AM radio station in New Hope, employs several persons who regularly appear on the air and perform certain engineering functions at the two radio stations. In early June 1972, two of plaintiff's announcer-engineers contacted the Twin Cities local of AFTRA, a labor organization representing employees of television and radio broadcasting companies, presumably with the intent of seeking AFTRA to act as bargaining agent for plaintiff's employees. Shortly thereafter, Hal Newell, AFTRA executive secretary, met with most of plaintiff's announcer-engineers, and a number of them signed applications for membership in AFTRA.

On June 15, 1973, AFTRA representative Newell sent a letter by certified mail to plaintiff claiming a majority of plaintiff's employees were members of AFTRA and demanding recognition as bargaining agent for the employees. On the same day, Newell filed a petition with the Minneapolis Regional Office of the National Labor Relations Board (NLRB) asking for an election among the on-the-air personnel to determine whether AFTRA would be certified as their collective-bargaining agent.

Defendants contend that after receiving Newell's letter on June 18, 1973, plaintiff questioned its employees concerning union activity. On June 21, 1973, plaintiff discharged announcer Richard Carey who, along with Ellsworth, had led efforts to organize other announcer personnel and persuade them to join AFTRA. On June 21, following Carey's discharge, the employees decided to strike. On June 22, they met with AFTRA representative Newell and AFTRA's counsel and reaffirmed their decision to strike and picket plaintiff's radio stations. At the same time AFTRA filed an unfair labor practice charge with the NLRB.

At approximately 5 p. m., on June 22, 1973, the two employees who were then on the air left their announcing booths and joined other employees in picketing the two stations. Plaintiff contends that this ac-

---

[1] The trial court denied the motion for summary judgment with respect to Ellsworth because the court felt that there were allegations made as to his conduct which, if proven in a trial, could properly give rise to a remedy in the state courts.

tion, which was done without prior notice to it, was not a good-faith union activity, but was a conspiracy to force plaintiff to change managers. Plaintiff also contends that while engaged in the strike defendants undertook a series of actions including threats, intimidations, acts of violence, and interference with contractual relationships which gave rise to this action.

The issue for our consideration is whether the trial court was correct in deciding that the activities complained of by plaintiff are preempted by the NLRA.

The case which sets the guidelines for our decision is San Diego Building Trades Council v. Garmon, 359 U. S. 236, 79 S. Ct. 773, 3 L. ed. 2d 775 (1959). In that case, the United States Supreme Court held that an activity which arguably is either protected by § 7 of the NLRA, 29 USCA, § 157, or constitutes an unfair labor practice under § 8 of the NLRA, 29 USCA, § 158, is preempted and may not be regulated by the states except where violence or coercive conduct is involved which presents imminent threats to the public order. The court took this position because it felt that Congress entrusted administration of the labor policy for this country to the NLRB. Therefore, allowing the states to freely regulate such conduct would involve "too great a danger of conflict between power asserted by Congress and requirements imposed by state law." 359 U. S. 244, 79 S. Ct. 779, 3 L. ed. 2d 782.

The trial court was clearly aware of this standard and considered it in reaching its decision. In denying the motion for a temporary injunction and granting the motion for summary judgment, the trial court specifically found that the affidavits filed by plaintiff were insufficient to overcome Federal preemption. In reaching this decision, the trial court cited three leading cases in which incidents were determined to be sufficiently provocative to permit state jurisdiction in labor-related matters. In these cases, the United States Supreme Court held that the compelling state interest in maintaining domestic peace should not be overridden in the absence of clearly expressed congressional direction. See, United Const. Workers v. Laburnum Const. Corp. 347 U. S. 656, 74 S. Ct. 833, 98 L. ed. 1025 (1954); United Auto Workers v. Wisconsin Employment Relations Board, 351 U. S. 266, 76 S. Ct. 794, 100 L. ed. 1162 (1956); Automobile Workers v. Russell, 356 U. S. 634, 78 S. Ct. 932, 2 L. ed. 2d 1030 (1958). See, also, Youngdahl v. Rainfair, Inc. 355 U. S. 131 78 S. Ct. 206, 2 L. ed. 2d 151 (1957).

Plaintiff contends that defendants' actions in the present case bring it squarely within the exception in Garmon for cases involving acts of coercion and violence. In support of its contention, plaintiff asserts that

defendants (1) conspired to maliciously and unlawfully terminate the broadcasting of plaintiff's stations; (2) tortiously interfered with plaintiff's individual employment contracts with its employees; (3) interfered with plaintiff's contracts with advertisers and engaged in an unlawful secondary boycott; (4) unlawfully threatened visitors and employees; and (5) carried out acts of violence against plaintiff's employees.

We have carefully reviewed all of the affidavits in this case which relate to the activities complained of by plaintiff and have determined that with the exception of allegations set forth in two of the affidavits, relating to a bomb threat against the stations' program director and the firing of bullets into the car of one of the station engineers, the decision of the trial court that the remaining activities are preempted by Federal law as to all defendants except Ellsworth should be affirmed. With respect to the affidavits alleging a bomb threat against the program director and the firing of bullets into the car of one of the station engineers, however, we are of the opinion that this alleged conduct falls directly within the exception in Garmon for cases involving violent or coercive conduct which presents the threat of physical abuse to individuals or which presents imminent threats to the public order. At the time that the affidavits alleging the incidents were filed, there was no concrete evidence linking these acts to any of the defendants. Because summary judgment was granted to defendants in this case before the discovery process had begun, plaintiff was never permitted to determine whether evidence existed to substantiate these claims and connect defendants with them. We believe that the granting of summary judgment under these circumstances was premature.

It may very well be that plaintiff will be unable to produce sufficient evidence to withstand a later motion for summary judgment made after all discovery has been completed relative to these claims. However, because the claims relate directly to violent or coercive conduct which threatens physical abuse to individuals and also threatens the public order, they should be fully considered by the state court. Therefore, we affirm the decision of the trial court except so far as it pertains to plaintiff's claims of bomb threats against the program director and the firing of bullets into the car of a station engineer. We reverse and remand the case for further consideration of those claims. We also affirm that part of the trial court's decision which denied the motion for summary judgment with respect to defendant Ellsworth. We agree with the trial court that there were allegations made as to his con-

duct which, if proven, properly give rise to a remedy in the state courts. Affirmed in part and reversed in part.

Scott, Justice (dissenting).

I strongly dissent from the majority opinion and would reverse the trial court's determination that the alleged activities of defendant Ellsworth were subject to state regulation under San Diego Bldg. Trades Council v. Garmon, 359 U. S. 236, 79 S. Ct. 773, 3 L. ed. 2d 775 (1959). While it is clear that under the Garmon doctrine state courts may properly entertain actions involving coercion or violence on the part of a labor organization and individuals even if Federal labor relations statutes apply to the situation, the allegations in the appellant's complaint, that "the defendants and each of them have been * * * threatening visitors and employees," considered in the light most favorable to appellant would constitute unfair labor practices under the National Labor Relations Act and would therefore be preempted by that act. Until appellant can be more specific in its complaint about the bomb threat or the bullet holes being fired into engineer Charles Engel's car, which incidents were alleged in affidavits, we should not stretch the Garmon case to allow an action to proceed when it appears clearly preempted by Federal statutes.

This court should strictly construe the Garmon case and not allow state jurisdiction where the complaint merely makes sweeping attacks on various activities during labor organizing:

"* * * When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U. S. 245, 79 S. Ct. 780, 3 L. ed. 2d 783.

The employees have a right to organize for the purpose of bargaining collectively. There is seldom a situation in this field where there are not charges and countercharges as there are in this case, whether true or not.

In Garmon, the court was faced with substantially similar activity to that alleged here, i. e., the exertion of pressures upon customers and suppliers to discontinue dealings with the respondents there. The court found the possibility that § 7 or § 8 of the National Labor Relations Act would encompass such activity existed and therefore displaced state court jurisdiction. Such conduct, the court further concluded, was not of such a nature as to invoke the exception of the "compelling state in-

terest." 359 U. S. 247, 79 S. Ct. 781, 3 L. ed. 2d 784. Such reasoning is definitely applicable here.

Without present imminent threats to the public order, there seems no reason for joint jurisdiction and duplicate efforts involving the same allegations merely because the plaintiffs decided to bring such an action. It would seem a step backward to have the court, at this point in time, *reenter* the field of labor disputes of this type and dimension which have so long, and properly so, been preempted by the National Labor Relations Act. It seems unnecessary. I would sincerely suggest, from the standpoint of commonsense, that this matter be pursued under uniform Federal standards.

MR. JUSTICE OTIS and MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.