HENNEPIN BROADCASTING ASSO-
CIATES, INC., a Minnesota
Corporation, Plaintiff,

v.

NATIONAL LABOR RELATIONS
BOARD, an Agency of the United
States Government, et al., Defendants.

Civ. No. 4–75–211.

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 29, 1975.

James Malcolm Williams, Minneapolis, Minn., for plaintiff.

Abigail Cooley, Asst. Gen. Counsel for Special Litigation, Washington, D. C., for N. L. R. B. and officers thereof.

James T. Hansing, Minneapolis, Minn., for private defendants.

## MEMORANDUM AND ORDER

MILES W. LORD, District Judge.

This matter is now before this Court on the motion of United States and the other defendants to dismiss for lack of jurisdiction over the subject matter of this action and for failure to state a claim upon which relief may be granted.

Plaintiff operates radio broadcasting stations KTCR–AM and KTCR–FM in Hennepin County, Minnesota. The defendants include the National Labor Relations Board (N. L. R. B.); Peter G. Nash and Robert J. Wilson (N. L. R. B. officers); the American Federation of Television and Radio Artists (AFTRA); AFTRA, Twin City local, AFL–CIO; Hal Newell (an officer of AFTRA, Twin City local); and Robert Gustafson, Ray Walby, John Bortnem and Greg Ellsworth (striking union members).

The plaintiff and defendant AFTRA and its Twin City local are currently involved in a labor dispute which originated in a June 1973 strike by plaintiff's employees who are members of AFTRA.

Plaintiff seeks the following relief:

I. An Order in the nature of mandamus compelling the N. L. R. B., through its officers, to issue a complaint upon unfair labor practices charges previously filed by plaintiff with the N. L. R. B.;

II. Money damages (compensatory and punitive) against defendants AFTRA, its Twin City local, Hal Newell, and the striking union member defendants for conduct allegedly constituting unfair labor practices under § 8(b)(4) of the National Labor Relations Act, as amended 29 U.S.C. § 158(b)(4).

III. Money damages (compensatory and punitive) against the defendants in Count II for conduct allegedly amounting to tortious interference with business relationships and contracts under state common law.

The complaint alleges that defendant AFTRA and its Twin City local, through their agent Hal Newell, conspired with defendants Gustafson, Walby, Bortnem and Ellsworth in using threatening and coercive tactics as part of a scheme and conspiracy to instigate secondary boycotts of advertisers of plaintiff radio station. Specifically these activities are alleged to have been committed by picketing, passing out literature and using various forms of threat and coercion designed to prevent customers of the advertisers from purchasing the advertisers products. (primarily automobiles). These activities allegedly occurred at various automobile dealerships in the Twin Cities area during November and December of 1974, both during remote radio broadcasts over plaintiff radio station and when no broadcasts were being conducted. The complaint claims that these activities have had the effect of successfully coercing and interfering with sales, sales contracts, and customers of the advertising customers business. Plaintiff alleges that these activities have resulted in injury to its property and business.

For reasons to be discussed herein, Counts I and III of this complaint must be dismissed. Furthermore, the plaintiff may proceed on Count II for compensatory, but not punitive, damages. Furthermore, the plaintiff may only proceed under Count II against the union defendants and not the individual union members.

## COUNT I

In Count I of this complaint, the plaintiff seeks an order directing that the defendants Nash and Wilson, as officers of the N. L. R. B., issue an unfair labor practices complaint on charges previously filed with the board. Plaintiff contends that this Court has jurisdiction to make such an order under its mandamus power, 28 U.S.C. § 1361, Section 10 of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* and under the due

process and equal protection clauses of the United States Constitution.

Section 3(d) of the National Labor Relations Act, 29 U.S.C. § 153(d) provides that: "[The General Counsel] shall have *final authority,* on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 160 of this title . . . ." (emphasis added). Federal Courts ordinarily have no jurisdiction to review the General Counsel's exercise of this authority. *N. L. R. B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29, 43 U.S.L.W. 4491, 4498 (1975); *Vaca v. Sipes,* 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Braden v. Herman,* 468 F.2d 592, 593 (8th Cir. 1972), *cert. denied,* 411 U.S. 916, 93 S.Ct. 1546, 36 L.Ed.2d 308 (1973).

■■■■ Here the General Counsel followed the Regional Director's refusal to issue a complaint. The Regional Director found that there was "insufficient evidence that the Union's handbilling and picketing on various dates at . . [the] automobile dealerships was violative of the secondary boycott provisions of the Act . . . ." Additionally, he commented that, "[T]here is no evidence that the Union threatened or coerced any persons to force them to cease doing business with any of the respective automobile dealers." (Letter of February 27, 1975 from Regional Director, Robert J. Wilson to James Malcolm Williams, Plaintiff's attorney).

While this Court is not bound in this action by the General Counsel's evaluation of the merits of the plaintiff's claim, it appears that adequate consideration was given to the plaintiff's charges and that a discretionary decision was made not to issue an unfair labor practices complaint. Furthermore, due process does not require that board officials act only after the benefit of a hearing. *Braden v. Herman, supra,* 468 F.2d at 593. While there might exist some extreme cases where this Court would have the power to compel the N. L. R. B. to issue, or at least reconsider issuing, an unfair labor practices complaint, this is not the case here. Here the General Counsel through his staff reached a decision after a full and fair consideration of the facts.

Under these circumstances the decision of the General Counsel is final and not subject to review by this Court. *Braden v. Herman, supra.*

## COUNT II

Count II of the complaint seeks compensatory and punitive damages alleging that the striking defendants and their union violated § 8(b)(4) of the National Labor Relations Act, as amended 29 U.S.C. § 158(b)(4).

In pertinent part, 29 U.S.C. § 158(b)(4) makes it an unfair labor practice for "a labor organization or its agents"

(i) to engage in . . . a strike . . . or

(ii) to threaten, coerce, or restrain any person engaged in commerce . . . where in either case an object thereof is

. . . . .

forcing or requiring any person . . to cease doing business with any other person . . . .

Section 303 of the Labor Management Relations Act, 1947 (29 U.S.C. § 187) provides that:

(a) It shall be unlawful . . . in an industry or activity affecting commerce, for any *labor organization* to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, *and shall recover the damages by him sustained* and the cost of the suit. (emphasis added).

29 U.S.C. § 185(b) provides as follows:

(b) Any *labor organization* which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such *labor organization may* sue or *be sued* as an entity and in behalf of the employees whom it represents in the courts of the United States. *Any money judgment against a labor organization* in a district court of the United States *shall be enforceable only against the organization* as an entity and against its assets, *and shall not be enforceable against any individual member or his assets.* (emphasis added).

■ It is clear from the above statutes and the case law interpreting them that as far as § 303 actions for damages are concerned: 1) Damages are available only as against the labor union itself and not against its individual members, 29 U.S.C. § 187(a); 29 U.S.C. § 185(b); 2) a judgment is recoverable only against the union and not its individual members, 29 U.S.C. § 185(b); and 3) only actual, compensatory damages are recoverable for § 303 violations, 29 U.S.C. § 187(b); *Teamsters Union v. Morton,* 377 U.S. 252, 260, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964).

Therefore, at the outset, Count II must be limited to a suit against the union defendants for compensatory, but not punitive, damages.

■ The secondary boycott section of the National Labor Relations Act (§ 8(b)(4), *quoted supra*) in essence makes it unlawful for a labor organization to pressure a neutral retailer to cease doing business with an employer with whom the union is engaged in a primary labor dispute. The complaint here alleges that the purpose and effect of the alleged picketing and handbilling at the neutral retailers' premises was to prevent customers of the neutral retailer from purchasing the neutral retailers' products. This allegation states a cause of action under § 303 and § 8(b)(4).

■ A union may peacefully picket a neutral party when the object of the picketing is to persuade customers not to buy a product advertised on the struck radio station. *N. L. R. B. v. San Francisco Typographical Union,* 465 F.2d 53, 55–56 (9th Cir. 1972). The striking union may conduct a consumer boycott of the employer's product and the boycott can include picketing and distributing handbills at a neutral retailer's place of business, so long as these activities are confined to persuading the public not to purchase those products of the neutral retailer advertised on the struck employer's radio station. *N. L. R. B. v. San Francisco Typographical Union, supra,* 465 F.2d at 56. However, the striking union must confine its boycott efforts to those products advertised on the struck employer's station and may not conduct a general boycott of all of the neutral retailer's products. *Id.; N. L. R. B. v. Fruit & Vegetable Packers & Warehousemen, Local 760,* 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129. [*N. L. R. B. v. Fruit Packers*].

In *N. L. R. B. v. Fruit Packers,* the Supreme Court explained the reasoning behind the limitations on secondary boycott activities involving neutral retailers (secondary employers) as follows:

When consumer picketing is employed only to persuade customers not to buy the struck product, the union's appeal is closely confined to the primary dispute. The site of the appeal is expanded to include the premises of the secondary employer, but if the appeal succeeds, the secondary employer's purchases from the struck firms are decreased only because the public has diminished its purchases of the struck product. On the other hand, when consumer picketing is employed to persuade customers not to trade at all with the secondary employer, the latter stops buying the struck product, not because of a falling demand, but in response to pressure designed to inflict injury on his business generally. In such case, the union does more than merely follow the struck product; it creates a separate dispute with the

secondary employer. 377 U.S. at 72, 84 S.Ct. at 1071.

The nature and scope of the picketing and handbilling activities are questions of fact for the jury. It is sufficient for the purpose of this motion that the complaint alleges a cause of action under § 303, § 8(b)(4).

## COUNT III

 Count III of plaintiff's complaint is to obtain money damages (compensatory and punitive) against the same defendants named in Count II for conduct allegedly amounting to a tortious interference with business relations and contracts under state common law.

State common law has been displaced by § 303 in private damage actions based on peaceful union secondary activity. *Teamsters Union v. Morton, supra,* 377 U.S. at 261, 84 S.Ct. 1253; *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) the Supreme Court held that activity which arguably is either protected under § 7 of the National Labor Relations Act, 29 U.S.C. § 157, or constitutes an unfair labor practice under § 8 of that act, 29 U.S.C. § 158, is pre-empted and may not be regulated by the states except where violence or coercive conduct is involved which presents imminent threats to the public order. No such "imminent threats to the public order" are present here. We note that plaintiff in his complaint challenges the actions complained of here as violations of § 8 of the Act. This Court concludes that in this action the state common law is pre-empted by § 303.

Furthermore, even if a state common law count could properly be brought, this Court would decline in its discretion to exercise pendent jurisdiction over it. *United Mine Workers v. Gibbs, supra.* A portion of the disputes involved in this strike have already been the subject of action in the state court and this Court sees no reason why any further state claims should not be re-solved in the state courts. *Hennepin Broadcasting Associates, Inc. v. American Federation of Television and Radio Artists,* Minn., 223 N.W.2d 391 (1974).

Therefore for the reasons discussed herein, IT IS ORDERED THAT:

1. Counts I and III are hereby dismissed.

2. Count II is hereby limited to actual compensatory damages against the union defendants.

3. The following defendants are hereby dismissed from this suit: National Labor Relations Board; Peter G. Nash; Robert J. Wilson; Hal Newell; Robert Gustafson; Ray Walby; John Bortnem and Greg Ellsworth.

IT IS SO ORDERED.