**MIDWEST PIPE INSULATION, INC.,**
**d/b/a MPI, Inc., Respondent,**

v.

**MD MECHANICAL, INC., Defendant,**

**Minneapolis Pipefitters Union,**
**Local 539, Appellant.**

No. A07–1706.

Supreme Court of Minnesota.

Aug. 6, 2009.

Brendan D. Cummins, Nicole M. Blissenbach, Miller–O'Brien–Cummins, P.L.L.P., Minneapolis, MN, for appellant.

Alec J. Beck, Douglas P. Seaton, Michael L. McCain, Seaton, Beck & Peters, P.A., Minneapolis, MN, for respondent.

Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, D.C., for amicus curiae Building and Construction Trades Department, ALF–CIO.

## OPINION

ANDERSON, G. BARRY, Justice.

This litigation arises out of a dispute over a market recovery program instituted by a construction union, and allegations by a nonunion contractor that it lost a contract as a result of union actions. We hold that the litigation at issue is preempted by the National Labor Relations Act, 29 U.S.C. §§ 151–169 (2006).

Respondent Midwest Pipe Insulation, Inc. (MPI) is a nonunion insulation contractor in the business of pipe, boiler, and ductwork installation throughout the state of Minnesota. Appellant Minneapolis Union, Pipefitters Local 539 (Local 539), is an unincorporated labor organization.[1] MD Mechanical, Inc. (MD) is a Minnesota corporation engaged in mechanical and pipefitting work. The litigation at issue concerns Local 539's alleged inducement of a breach of a subcontract between MD and MPI for work on a St. Michael–Albertville elementary school construction project in Wright County.

---

1. Because this case is before us on an appeal from a motion on the pleadings, we accept the allegations in the challenged pleading as true. *State ex rel. City of Minneapolis v. Min-* *neapolis St. Ry. Co.*, 238 Minn. 218, 223, 56 N.W.2d 564, 567 (1952). As such, the facts are taken from MD's complaint.

Local 539 conducts a market recovery program, which is designed to maintain and improve the market share of unionized contractors by subsidizing the wage costs of such contractors who successfully bid on construction projects. Local 539's market recovery program provides grants to contractors who agree to sign Local 539's collective bargaining agreement and agree that all covered pipefitter work will be performed by pipefitters dispatched from Local 539. Union members fund the program through wage deductions. Deducted amounts are transferred into Local 539's market recovery program.

■ The Wright County building project at issue involved the construction of a new elementary school for the St. Michael–Albertville communities. The project was privately funded and not subject to the federal Davis–Bacon Act, 40 U.S.C. §§ 3141–48 (2006),[2] or the Minnesota Prevailing Wage Act (MPWA), Minn.Stat. §§ 177.41–44 (2008).[3]

On June 8, 2006, MPI submitted a subcontractor's bid to MD to furnish and provide labor and materials, including, but not limited to, plumbing, hydronic pipe, and external duct insulation, for the school construction. The same day, Local 539 awarded a market recovery program grant in the amount of $80,000 to MD relating to pipefitting work on the project covered by

Local 539's collective bargaining agreement. MPI alleged that this grant was illegal and violated the MPWA and Davis–Bacon Act "to the extent the 'target money' [was] funded, in whole or part, by deductions from employees' wages paid on past or present [MPWA and/or federal Davis–Bacon] construction projects."

On June 26, 2006, MD accepted MPI's bid of $166,800 and sent MPI a standard subcontract agreement signed and executed by MD's president. But, according to MPI, the award of the subcontract to MPI was not the end of this transaction. MPI alleged in its complaint that on July 11, 2006, MD's president contacted MPI's office manager and informed her that Local 539 was pressuring MD to breach its subcontract agreement with MPI. MPI alleged that Local 539 threatened to rescind the promised grant if MPI's nonunion laborers performed the subcontract insulation work for the school construction project. Local 539 denied these allegations.

MPI alleged that on July 11, 2006, MD sent a letter to MPI terminating the June 26, 2006, MPI subcontract agreement. MPI further alleged that MD subsequently hired a union contractor to perform the pipe insulation work on the project, in place of MPI. MPI filed a complaint against MD and Local 539, alleging that

---

**2.** The Davis–Bacon Act provides, among other things, that laborers on federal construction projects must be paid no less than the minimum wage specified by the Secretary of Labor, "without subsequent deduction or rebate on any account." 40 U.S.C. § 3142(c)(1). It was enacted to protect union employees. *United States v. Binghamton Constr. Co.,* 347 U.S. 171, 177, 74 S.Ct. 438, 98 L.Ed. 594 (1954). The Davis–Bacon Act does not create a private right of action under a contract that does not call for Davis–Bacon work. *Univs. Research Ass'n v. Coutu,* 450 U.S. 754, 783–84, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981).

**3.** The MPWA provides that laborers on projects financed by state funds must be paid wages "comparable to wages paid for similar work in the community as a whole." Minn. Stat. § 177.41. It does not prohibit deductions or rebates. Although neither the Davis–Bacon Act nor the MPWA apply to this particular project, MPI alleges that Local 539 previously violated these acts by deducting dues from other projects covered by the Davis–Bacon Act or the MPWA; that Local 539 used those dues to fund, at least in part, the market recovery grant offered to MD; and that those violations would make the market recovery grant illegal.

the breach caused substantial damage to MPI.

Local 539 filed a motion for judgment on the pleadings. The district court granted the motion, holding that MPI's state-law tortious interference claim was preempted by federal labor law. On appeal, the court of appeals reversed the district court, holding that MPI's claim was not preempted by federal labor law. We granted Local 539's petition for further review, which asked us to reverse the court of appeals and we conclude that the district court properly dismissed the case because MPI's claim was preempted by federal labor law.

■■■ An appeal from a dismissal on the pleadings is reviewed de novo. *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 623 (Minn.2007). To withstand a motion for judgment on the pleadings, MPI must state facts that, if proven, would support a colorable claim and entitle it to relief. *N. States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963). The district court must accept the allegations contained in the challenged pleading as true. *State ex rel. City of Minneapolis v. Minneapolis St. Ry. Co.*, 238 Minn. 218, 223, 56 N.W.2d 564, 567 (1952).

This appeal concerns the primary jurisdiction of the National Labor Relations Board (NLRB) to resolve labor disputes under the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169 (2006).

The NLRA protects and prohibits certain union activities. On one hand, section 7 of the NLRA protects the right to unionize "and to engage in other concerted activities for the purpose of collective bargaining. . . ." 29 U.S.C. § 157. Both parties agree that market recovery programs are generally protected by this section.

On the other hand, section 8(b)(4)(ii) of the NLRA makes it an unfair labor practice for a union "to threaten, coerce, or restrain any person engaged in commerce" where the goal is to force the person "to cease doing business with any other person." 29 U.S.C. § 158(b)(4)(ii)(B). Section 8(e) of the Act makes it an unfair labor practice for any union and employer to enter into an agreement in which the employer agrees to cease doing business with any other person, with the exception of contracting and subcontracting in the construction industry. 29 U.S.C. § 158(e).

■■■ The NLRA does not include an express preemption provision, but the United States Supreme Court has repeatedly held that the NLRB's power to implement the NLRA is exclusive. *See, e.g. Bethlehem Steel Co. v. New York State Labor Relations Bd.*, 330 U.S. 767, 775–77, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947). The rationale behind this exclusive jurisdiction is to ensure that the NLRA is applied uniformly nationwide. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) ("To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law."). As a result, an employer grievance against a union that is subject to the NLRA, and thus within the NLRB jurisdiction, is generally not subject to litigation in a state court if it means that two potentially conflicting statutes (the state law alleged to be violated and the applicable provision of the NLRA) would be "brought to bear on the same activity." *Garner v. Teamsters Chauffeurs and Helpers Local Union No. 776*, 346 U.S. 485, 498–99, 74 S.Ct. 161, 98 L.Ed. 228 (1953).

In *Garmon*, the United States Supreme Court concluded that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are

protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield."[4] 359 U.S. at 244, 79 S.Ct. 773. Thus, "[w]hen an activity is arguably subject to § 7 or § 8 of the Act," state jurisdiction is preempted in favor of the NLRB. *Id.* at 245, 79 S.Ct. 773. If Local 539's actions were clearly or arguably protected under section 7 of the NLRA, or clearly or arguably prohibited under section 8 of the NLRA, the district court does not have jurisdiction over MPI's claims.

While it denies having done so, Local 539 argues that if it had threatened to withdraw its market recovery program grant from MD if MD did not terminate the MPI–MD subcontract and hire a union contractor, that would be an unfair labor practice ("secondary pressure") prohibited by section 8(b)(4) of the NLRA. Section 8(b)(4) provides: "It shall be an unfair labor practice for a labor organization . . . *to threaten, coerce, or restrain any person engaged in commerce . . . where . . . an object thereof is forcing or requiring any person . . . to cease doing business with any other person.*" 29 U.S.C. § 158(b)(4)(ii)(B).

We interpreted this provision in *Hennepin Broadcasting*, where an employer brought litigation against a labor union alleging that, among other things, the union engaged in a "conspiracy" to force the employer to change managers and engaged in an "unlawful secondary boycott." *Hennepin Broad. Assocs. v. Am. Fed'n of Television & Radio Artists*, 301 Minn. 508, 510–11, 223 N.W.2d 391, 393–94 (1974). With the exception of allegations of violence, we determined that the remaining allegations were preempted by the NLRA. *Id.* at 511, 223 N.W.2d at 394. In this case, MPI alleges that Local 539 threatened to rescind its market recovery program grant in order to coerce MD into breaking its contract with MPI. MPI's allegations fall squarely under the prohibitions outlined in section 8.[5]

MPI attempts to bypass the section 8 analysis, and our holding in *Hennepin Broadcasting*, by asserting that because Local 539 violated provisions of the Davis–Bacon Act, Local 539's actions are no longer protected by the NLRA, and therefore preemption no longer applies. But MPI's suit is preempted not because Local 539's actions are *protected* by the NLRA, in which case illegal activity might be relevant, but rather because Local 539's

4. Section 7 sets out conduct that is protected by the NLRA; section 8 sets out conduct that is prohibited. 29 U.S.C. §§ 157, 158.

5. We note that the NLRB's Advice Memorandum, Midwest Pipe Insulation, Case 18–CA–18838 (Jan. 30, 2009), although not binding on our court, takes a similar position. On August 29, 2008, 3 days after the court of appeals ruled that MPI's tortious interference claim was not preempted by federal labor law, Local 539 filed an unfair labor practice charge with the NLRB, alleging that MPI's lawsuit was preempted and interfered with the exercise of the union's rights under Section 7. The Advice Memorandum, prepared by counsel to the NLRB, states: "The Union's

alleged tortious conduct was, if substantiated, actually prohibited by the Act because it violated Section 8(b)(4)(ii)(B)." The Memorandum further observes: "Although [MPI's] lawsuit's focus on conduct actually prohibited by the Act renders it preempted under *Garmon*, a preempted lawsuit that does not restrain or coerce employees in the exercise of their Section 7 rights does not constitute an unfair labor practice." The Memorandum recommends that Local 539's unfair labor practice charge be dismissed because the activity with which MPI's state court complaint allegedly interfered is not protected by federal labor laws.

actions are *prohibited.*[6] Because Local 539's actions, as alleged by MPI, are prohibited by the NLRA under section 8, it is irrelevant whether Local 539 also violated the Davis–Bacon Act and whether that violation would take the market recovery program outside of the ambit of section 7. When a union's actions are prohibited or arguably prohibited by the NLRA, state courts must cede jurisdiction to the NLRB. *Garmon,* 359 U.S. at 244, 79 S.Ct. 773. Thus, as a result of NLRA preemption, state courts are deprived of jurisdiction over MPI's allegations. We reverse the court of appeals and affirm the district court's dismissal on the pleadings. In doing so, we express no opinion about the substantive merits of any of the claims of the parties to this litigation.

Reversed.

---

6. MPI argues instead that Local 539's alleged actions are not prohibited under section 8 of the NLRA. We disagree and note again that the NLRB Advice Memorandum concludes that the allegations, if true, are prohibited under section 8.