*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1154**

Kenneth S. Benigni,
Appellant,

vs.

St. Louis County,
Respondent,
State of Minnesota,
by Department of Human Services,
Respondent,
Lake Superior Community Health Center,
Respondent.

**Filed June 13, 2016
Affirmed
Stauber, Judge**

St. Louis County District Court
File No. 69DU-CV-13-1931

Peter J. Nickitas, Peter J. Nickitas Law Office, L.L.C., Minneapolis, Minnesota (for appellant)

Mark Rubin, St. Louis County Attorney, Nicholas D. Campanario, Assistant County Attorney, Duluth, Minnesota (for respondent St. Louis County)

Lori Swanson, Attorney General, Aaron E. Winter, Assistant Attorney General, St. Paul, Minnesota (for respondent Department of Human Services)

Kevin C. Riach, Anupama D. Sreekanth, Ryan C. Young, Fredrickson & Byron, P.A., Minneapolis, Minnesota (for respondent Lake Superior Community Health Center)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Stauber, Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant recipient of medical-assistance benefits brought claims for promissory estoppel, negligent misrepresentation, consumer fraud, and data-practices violations against his medical provider, the county, and the state, after he learned that the receipt of medical-assistance benefits could lead to a claim against his estate or a lien against his real-property interests. The district court dismissed all of appellant's claims as time-barred, except his negligent misrepresentation claim against the county. The district court also ruled in the alternative that some of appellant's claims failed to state a claim upon which relief could be granted. The district court then granted summary judgment to the county on appellant's negligent misrepresentation claim. Appellant challenges each ruling and argues that reversal is also required because the district court was biased. We affirm.

## FACTS

In June 2004, appellant Kenneth S. Benigni applied for medical assistance (M.A.) through respondent Lake Superior Community Health Center (LSCHC) in Duluth. According to appellant, the individual assisting him with the M.A. application form removed a six-page section of the form without showing it to appellant. This section of the form included information about the state's ability to place a lien on appellant's property to recoup appellant's share of his M.A.

At some point in 2005, appellant received a M.A. renewal application form. The renewal application form contained the "Notice of Privacy Practices and

Responsibilities" section, which states that "[t]he state or county may try to recover the cost of medical services that MA . . . paid for you. They do this by filing a claim against your estate or by filing a lien against your real property."

After receiving the 2005 renewal form, appellant contacted Kathy Pavolwich, his social worker with respondent St. Louis County (county), and "requested information concerning the sum that St. Louis County . . . or the state . . . had paid out to date to the insurance company relating to [appellant's] M.A. account." Appellant also requested "complete clarification concerning the 'lien and estate claims' that the state or county may . . . try to attach, to recover the cost of medical services that M.A. paid for [appellant]." According to appellant, he then "relied on" Pavolwich's assurances that "the stated lien claims would not apply to him." But despite his alleged reliance on Pavolwich's assurances, appellant "made numerous requests for access to data" to the county and respondent Minnesota Department of Human Services (DHS) under the Minnesota Government Data Practices Act (MGDPA) to "ascertain the nature and extent of a potential lien or claim against his property and estate."

In July 2007, appellant contacted Patti Theno, his county case worker, and requested that his M.A. account be canceled due to a potential lien being attached against his estate. Theno told appellant that he had nothing to worry about because no lien would be placed on his estate. Appellant subsequently contacted Ina Minehan at DHS who informed him that Theno's representations were incorrect. Appellant then made several calls over the course of the next few days in an attempt to learn whether a lien could be placed on his estate to recover the amount he received in M.A. benefits. During this

3

process, appellant spoke with Theno's supervisor, Renee Selleck on July 31, 2007, who informed appellant that the only time recoupment of M.A. benefits is sought is if the recipient is "not entitled to [M.A. benefits]."

Despite Selleck's representations, appellant sought further clarification. Appellant again spoke with Minehan who stated that the government "does put liens on estates to recover M.A. expenditures." Appellant subsequently contacted Selleck on August 3, 2007, who informed appellant that she "was wrong" and that his M.A. benefits were subject to recovery through liens and estate claims. Appellant then canceled his M.A.

In July 2012, appellant received a "Claims History Profile" from DHS indicating an accumulation of approximately $20,000 on his M.A. account. A year later, appellant brought this action against the county alleging that he was damaged when he received M.A. benefits because he was not informed of the state's ability to place a lien against his property for unpaid amounts. Appellant subsequently amended his complaint twice, the second time adding DHS and LSCHC as defendants. In the second amended complaint, appellant asserted the following claims: (1) promissory estoppel against DHS; LSCHC, and the county[1]; (2) negligent misrepresentation against the county; (3) violation of MGDPA against all respondents; (4) a second negligent misrepresentation claim against DHS and LSCHC; (5) intentional misrepresentation against LSCHC; and (6) a claim under Minn. Stat. §§ 325F.67-.70 (2014) against LSCHC for false advertising and consumer fraud.

---

[1] DHS, LSCHC, and the county will hereinafter be collectively referred to as "respondents."

4

DHS and LSCHC moved to dismiss counts I, III, IV, V, and VI of appellant's second amended complaint for failure to state a claim under Minn. R. Civ. P. 12.02(e). The county moved for partial judgment on the pleadings under Minn. R. Civ. P. 12.03 on the same counts. The district court found that respondents "each argue variations on the same themes in their quests for dismissal of this matter," and that "primary to the various [respondents'] contentions are statute of limitations arguments." The district court concluded that under the damage-accrual rule, appellant's claims against respondents were barred by the statute of limitations. The district court also concluded that appellant's claim against respondents for promissory estoppel (count I), and his claim against LSCHC and DHS for negligent misrepresentation (count IV), fail to "set forth . . . legally sufficient claim[s] for relief and dismissal is appropriate because it appears to a certainty that no facts exist which would support granting the relief demanded." Thus, the district court granted LSCHC and DHS's motions to dismiss and the county's motion for judgment on the pleadings, and dismissed with prejudice counts I, III, IV, V, and VI of the second amended complaint.

In March 2014, the county moved for summary judgment on appellant's negligent misrepresentation claim, count II, the only remaining count in the second amended complaint. The district court determined that (1) because the county employees made misrepresentations of law, they cannot be the subject of a negligent misrepresentation lawsuit and (2) appellant is unable to prove justifiable reliance on the statements of the county employees. Thus, the district court granted the county's motion for summary judgment. This appeal followed.

5

# D E C I S I O N

## I.

Minn. R. Civ. P. 12.02(e) allows a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Under this rule, "a pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *N. States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963). No facts exist which would support granting the relief demanded "when it is clear and unequivocal from the face of the complaint that the statute of limitations has run on . . . the claims asserted." *Jacobson v. Bd. of Trs. of the Teachers Ret. Ass'n*, 627 N.W.2d 106, 109 (Minn. App. 2001), *review denied* (Minn. Aug. 15, 2001).

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed." Minn. R. Civ. P. 12.03. The standard for relief under rule 12.03 is similar to the standard under rule 12.02(e): "To withstand a motion for judgment on the pleadings, [a plaintiff] must state facts that, if proven, would support a colorable claim and entitle it to relief." *Midwest Pipe Insulation, Inc. v. MD Mech., Inc.*, 771 N.W.2d 28, 31 (Minn. 2009). "When a case is dismissed . . . for failure to state a claim for which relief can be granted, [an appellate court] review[s] the legal sufficiency of the claim de novo to determine whether the complaint sets forth a legally sufficient claim for relief." *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVC Caremark Corp.*, 850 N.W.2d 682, 692 (Minn. 2014).

6

Appellant challenges the district court's dismissal of counts I, III, IV, V, and VI of his second amended complaint, arguing that the district court erred by concluding that (1) these claims were barred by the statute of limitations and (2) in the alternative, appellant's claim against respondents for promissory estoppel and his claim against DHS and LSCHC for negligent misrepresentation fail to state claims upon which relief could be granted.

The parties agree that appellant's claims are subject to the six-year statute of limitations period set forth in Minn. Stat. § 541.05, subd. 1 (2014). "The statute of limitations begins to run on a claim when 'the cause of action accrues.'" *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832 (Minn. 2011) (quoting Minn. Stat. § 541.01 (2010)). "A cause of action accrues when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim." *Id.* We review "de novo the construction and application of a statute of limitations, including the law governing the accrual of a cause of action." *Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 686 (Minn. 2013) (quotation omitted).

Minnesota follows the damage-accrual rule. *Antone*, 720 N.W.2d at 336. Under this rule, the statute of limitations begins to run as soon as "some" damage has occurred as a result of the alleged action. *Hermann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999). "The running of the statute does not depend on the ability to ascertain the exact amount of damages." *Id.* Minnesota caselaw supports a broad interpretation of "some" damage. *Antone v. Mirviss*, 720 N.W.2d 331, 336 (Minn. 2006).

Counts I, III, IV, V, and VI of appellant's second amended complaint all arise out of appellant's application for and receipt of M.A. benefits. Appellant's alleged damage is his receipt of M.A. benefits because that is the action that conferred on the state the ability to place a lien on his estate. Because appellant began receiving M.A. benefits in September 2004, the statute of limitations on counts I, III, IV, V, and VI began to run at that time. Appellant did not file his complaint against the county until July 2013, and DHS and LSCHC were not added to the lawsuit until February 2014. These complaints were filed long after the six-year statute of limitations had expired. Therefore, the district court correctly concluded that they were untimely.

Appellant argues that the district court erred by concluding that claims I, III, IV, V, and VI were time-barred because respondents' "ongoing fraudulent concealment of the [M.A.] statutory lien information from [him] tolled the statute of limitations" on those claims. We acknowledge that fraudulent concealment of facts tolls limitation periods. *Cohen v. Appert*, 463 N.W.2d 787, 790-91 (Minn. App. 1990), *review denied* (Minn. Jan. 24, 1991). But fraudulent concealment tolls the statute of limitations only "until the party discovers, or has a reasonable opportunity to discover the concealed defect." *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 918 (Minn. 1990). It is not necessary that a party "know the details of the evidence establishing the cause of action, only that the cause of action exists. When a party has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim." *Id.* at 919 (quotation omitted).

Appellant's second amended complaint states that he "had no awareness of the consequence of the attachment of the lien, until his receipt of the 2005 renewal application form, appearing as Exhibit B." Exhibit B to the complaint provides that the "state or county may try to recover the cost of medical services that MA . . . paid for you . . . by filing a lien against your real property." Thus, when he received the M.A. renewal application form in 2005, appellant knew that the state could place a lien on his property to recoup his M.A. Although appellant suggests that the 2005 form is insufficient because it fails to state that the lien requirement is necessary, such a distinction is immaterial because regardless of whether it was mandatory, appellant was apprised of the state's ability to place a lien on his property, which is the power that appellant claims was concealed from him. Therefore, by his own admission, appellant knew or should have known of the alleged concealment and facts giving rise to his claim as early as 2005 when he received the 2005 renewal application form. Because he knew of these facts in 2005, the six-year statute of limitations on appellant's claim expired in 2011, two years before appellant filed his complaint. Accordingly, the district court did not err by dismissing counts I, III, IV, V, and VI of the second amended complaint. And because we conclude that appellant's claims are time-barred, we need not address the district court's alternative conclusion that appellant's claims against respondents for promissory estoppel and his claim against DHS and LSCHC for negligent misrepresentation fail to state claims upon which relief could be granted.

9

**II.**

A district court must grant a motion for summary judgment if the evidence demonstrates "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). We apply a de novo standard of review to the district court's legal conclusions on summary judgment and view the evidence in the light most favorable to the non-moving party. *RAM Mut. Ins. Co. v. Rohde*, 820 N.W.2d 1, 6 (Minn. 2012); *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 325 (Minn. 2010).

Negligent misrepresentations of fact may be actionable against government officers and employees to the extent that they involve misrepresentations as to "factual information maintained by the government" to which members of the public have no other access except through government officers and employees. *Mohler v. City of St. Louis Park*, 643 N.W.2d 623, 637 (Minn. App. 2002), *review denied* (Minn. July 16, 2002). A misrepresentation of law, however, is not actionable. *Northernaire Prods., Inc. v. County of Crow Wing*, 309 Minn. 386, 388-89, 244 N.W.2d 279, 281 (1976). The rationale for this rule is that the law is presumed to be equally within the knowledge of the parties. *Miller v. Osterlund*, 154 Minn. 495, 496, 191 N.W. 919, 919 (1923). The rule of nonactionability has two exceptions: (1) where the "person misrepresenting the law is learned in the field and has taken advantage of the solicited confidence of the party

defrauded" and (2) where a fiduciary or other similar relationship exists between the parties. *Northernaire Prods.*, 309 Minn. at 389, 244 N.W.2d at 281-82.

Appellant's negligent misrepresentation claim against the county is based on statements made by Theno and Selleck, who allegedly "supplied false information to [appellant] relating to the expenditure of monies for M.A. medical services, and the resulting lien or claim to attach to [appellant's] estate or real property." But appellant does not dispute that the statements made by Theno and Selleck were legal representations, nor does he claim that Theno and Selleck are "learned" in the field. Instead, he argues that the district court erred by granting summary judgment in favor of the county because the issue of whether there was a fiduciary relationship between appellant and Theno and Selleck involves "fact questions that the jury must decide."

"Ordinarily, the existence of a fiduciary relationship would be a question for the trier of fact." *Northernaire Prods.*, 309 Minn. at 389, 244 N.W.2d at 282. "A fiduciary relation exists when confidence is reposed on one side, and there is resulting superiority and influence on the other." *Stark v. Equitable Life Assurance Soc'y*, 205 Minn. 138, 145, 285 N.W. 466, 470 (1939) (quotation omitted). Simply reposing faith and confidence in a person does not create a fiduciary duty. *Id.*

In *Northernaire Prods.*, the plaintiffs, promoters of a rock concert, sued Crow Wing County and its employees after the plaintiffs were erroneously advised of the zoning requirements for the area where they had planned to stage a concert. 309 Minn. at 387-88, 244 N.W.2d at 280. In affirming the dismissal of the complaint, the supreme court held "as a matter of law," that the "individual defendants, solely by virtue of their

11

offices and in the absence of other facts evidencing an intent to assume such an obligation, owe no fiduciary duty to members of the public when giving advice." *Id.* at 389, 244 N.W.2d at 282. The supreme court elaborated that its

> holding is based on considerations of public policy. There is no dispute that the alleged misrepresentations were made in a good-faith effort to respond to plaintiffs' inquiries. Plaintiffs concede that defendants acted without malice or intent to deceive. To subject county officials to the prospect of liability for innocent misrepresentation would discourage their participation in local government or inhibit them from discharging responsibilities inherent in their offices. Their reluctance to express opinions would frustrate dialogue which is indispensable to the ongoing operation of government.

*Id.* at 389-90, 244 N.W.2d at 282. And the court noted that the plaintiffs "had alternative means of obtaining an interpretation of the zoning ordinance, either by consulting an attorney or by applying . . . for a formal interpretation pursuant to established procedures." *Id.* at 390, 244 N.W.2d at 282.

As in *Northernaire Prods.*, appellant does not claim that the county employees acted in bad faith, nor is there any evidence supporting such an allegation. Moreover, appellant could have sought advice from an attorney regarding the legal issue of whether the state could attach a lien to his estate after he began to receive M.A. benefits. In fact, appellant ultimately sought further legal advice on the issues when he contacted DHS. Thus, as in *Northernaire Prods.*, there is simply no evidence to support the existence of a

12

fiduciary relationship between appellant and Theno and Selleck. The district court did not err by granting summary judgment in favor of the county.[2]

### III.

In evaluating a claim of judicial bias, there is a "presumption that a [district] court judge has discharged his or her judicial duties properly," and a party alleging bias has the burden to establish allegations sufficient to overcome this presumption. *McKenzie v. State*, 583 N.W.2d 744, 747 (Minn. 1998). Adverse rulings are an insufficient basis to prove judicial bias. *Olson v. Olson*, 392 N.W.2d 338, 341 (Minn. App. 1986). And, an error cannot be argued based on "mere assertion" unsupported by argument or authority. *Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519-20, 187 N.W.2d 133, 135 (1971).

Appellant argues that the district court's statement in the summary judgment order that appellant "has a longstanding distrust of government in almost any form," is evidence of judicial bias and warrants reversal. We disagree. Appellant offers no support for his judicial bias argument other than this comment in the summary judgment order, and a reference to signs appellant apparently posts on his property. Moreover, the

---

[2] Appellant also claims in his brief that in addition to Theno and Selleck's representations, Pavolwich made misrepresentations dating back to 2005. But as the county points out, negligent misrepresentation must be pleaded with particularity. *See Hardin Cnty. Sav. Bank v. Hous. & Redev. Auth. of Brainerd*, 821 N.W.2d 184, 191 (Minn. 2012). Although the county claims that appellant did not plead with particularity the allegations against Pavolwich, we need not decide the issue because even if the second amended complaint was pleaded with particularity with respect to Pavolwich, summary judgment would be appropriate under the same reasoning applicable to Theno and Selleck.

comment was made in analyzing the issue of whether there was a fiduciary relationship between appellant and Theno and Selleck. In determining that a fiduciary relationship was lacking, the district court mentioned that appellant has a "longstanding distrust for government," and supported the statement by mentioning that appellant's "multiple calls to multiple government actors demonstrates that he did not blindly place his trust and confidence in Ms. Theno or Ms. Selleck." Although the district court's comment was arguably inappropriate and perhaps unnecessary, the statement does not demonstrate a lack of partiality sufficient to overcome the presumption disfavoring a determination of bias. *See Hooper v. State*, 680 N.W.2d 89, 93 (Minn. 2004) ("While removal is warranted when the judge's impartiality might reasonably be questioned, a[n] [appellant's] subjective belief that the judge is biased does not necessarily warrant removal."). Therefore, appellant is not entitled to a reversal based on judicial bias.

**Affirmed.**